NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. Pending)
Assistant United States Attorneys
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426
     Facsimile: (213) 894-0142
     E-mail:  Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 20-MJ-5691 |
|---|---|
| Plaintiff, | PRELIMINARY HEARING BRIEF |
| v. | Date: December 17, 2020 |
| THUAN LE, | Time: 11:30 a.m. |
|  | Court: Hon. Karen L. Stevenson |
| Defendant. |  |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Dan G. Boyle, hereby submits this brief to assist the Court in conducting the anticipated preliminary hearing in this matter.  The brief provides an overview

//
//
//

of the case law governing preliminary hearings, including timing requirements, the elements of the crime, the probable cause standard, evidentiary matters, and disclosures.

Dated: December 15, 2020

Respectfully submitted,

NICOLA T. HANNA  
United States Attorney

BRANDON D. FOX  
Assistant United States Attorney  
Chief, Criminal Division  
STEVEN R. WELK  
Assistant United States Attorney  
Chief, Asset Forfeiture Section

_____/s/_____  
DAN G. BOYLE  
Assistant United States Attorney

Attorneys for Plaintiff  
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On November 20, 2020, defendant Thuan Le ("defendant") was charged by criminal complaint with violations of 18 U.S.C. §§ 1344(1) and 1544. Defendant was arrested on November 24, 2020 and made his initial appearance on the same day. Defendant has been released on bond. On December 17, 2020, the Court is presently scheduled to hold a preliminary hearing to determine if these charges are supported by probable cause.

On December 11, 2020, the government filed a motion to exclude under the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(7), due to the recent activation the Continuity of Operations ("COOP") for this Court and suspension of all grand-jury proceedings until at least January 9, 2021. See C.D. Cal. Order of the Chief Judge No. 20-179, In Re: Coronavirus Public Emergency, Activation of Continuity of Operations Plan, at 2 (Dec. 7, 2020). Defendant opposed this motion on December 15, 2020, and that motion remains pending at this time.

**II.   TIMING**

Preliminary hearings generally must be held "within a reasonable time, but no later than 14 days after the initial appearance if the defendant is in custody and no later than 21 days if not in custody." Fed. R. Crim. P. 5.1(c).  However, a magistrate judge may extend the time limits in Rule 5.1(c) under certain circumstances.  Where the defendant consents, an extension of the time limits for a preliminary hearing may be granted "upon a showing of good cause."  Fed. R. Crim. P. 5.1(d).  Where the defendant does not consent, a magistrate judge may extend the time limits "only on a showing that extraordinary circumstances exist and justice requires the delay."  Id.

1    By Order of the Chief Judge issued on December 7, 2020, this
2 Court activated its COOP Plan "effective December 9, 2020 at 5:00
3 p.m. through and including January 8, 2021." C.D. Cal. Order of the
4 Chief Judge No. 20-179, In Re: Coronavirus Public Emergency,
5 Activation of Continuity of Operations Plan, at 2 (Dec. 7, 2020).
6 The COOP Plan was activated in response to the surging number of
7 cases of COVID-19 in the Central District of California. Id.
8 Pursuant to the COOP Plan, the courthouses are closed, but criminal
9 bench duty continues by telephone or video conference with the
10 defendant's consent and in court absent consent. Id. at 2. The
11 Coronavirus Disease-2019 ("COVID-19") pandemic is an extraordinary
12 circumstance that may justify delay to protect the health and safety
13 of the defendant, court staff, counsel, and the public. See, e.g.,
14 United States v. Kilgore, No. CR 17-0203-JCC, 2020 WL 1331028, at *1
15 (W.D. Wash. Mar. 23, 2020) (granting a motion to continue trial and
16 related deadlines and citing in support the court's March 17, 2020
17 general order finding, in relevant part, that due to COVID-19
18 "extraordinary circumstances exist, and justice requires delay of all
19 criminal preliminary hearings during the time period of the
20 continuances implemented by this order"); United States v. Xalteno-
21 Alejo, No. 3:20-MJ-00822-MSB, 2020 WL 1433416, at *1 (S.D. Cal. Mar.
22 20, 2020) (finding based on the COVID-19 outbreak "that
23 'extraordinary circumstances exist and justice requires' that
24 defendant's preliminary hearing be continued beyond the 14-day
25 deadline of Fed. R. Crim[.] P. 5.1(c)").
26    Here, defendant is on bond, so the preliminary hearing is set
27 for December 17, 2020. While the government has not moved to
28 continue the presently-scheduled preliminary hearing, should the

Court's current COOP Plan or the requirements of conducting a preliminary hearing by video-teleconference cause a delay of this hearing due to the COVID-19 emergency, the Court may find that extraordinary circumstances exist and justice requires a short logistical delay.

### III. ELEMENTS OF THE CRIME

For defendant to be guilty of the first crime charged in the criminal complaint, that is, bank fraud, in violation of Title 18, United States Code, 1344(1), the following must be true:  (1) the defendant knowingly executed a scheme to defraud a financial institution as to a material matter; (2) the defendant did so with the intent to defraud the financial institution; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation. See Ninth Circuit Model Criminal Jury Instruction No. 8.125 (2010 ed.) (Approved April, 2019).[1] The phrase "scheme to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat a financial institution and deprive it of something of value. It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud. It is also not necessary for the government to prove that the defendant was actually successful in

---

[1] Courts have routinely held that that a risk of loss is sufficient to meet the elements of 18 U.S.C. §1344(1), including where a defendant's fraud exposes a bank to potential sanctions or penalties. See, e.g., United States v. Williams, 865 F.3d 1302, 1316 (10th Cir. 2017) ("[T]he government must show, in addition to materiality, that the financial institution was put at 'risk,' 'potential risk,' or suffered a 'risk of loss.'"); United States v. Brandon, 298 F.3d 307, 311-12 (4th Cir. 2002) ("it is sufficient for the government to show that a financial institution [was] exposed to an actual or potential risk of loss.") (brackets in original, citation omitted).

defrauding any financial institution. Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud. Id.

For defendant to be guilty of the second crime charged in the criminal complaint, that is, misuse of a passport, in violation of Title 18, United States Code, 1544, the following must be true: (1) the defendant knowingly used a passport; (2) the defendant acted willfully, that is, he deliberately and voluntarily used a passport; and (3) the passport was issued for the use of another person, or used in violation of the rules pursuant to the laws regulating the issuance of passports. Modified from Fed. Crim. Jury Instr. 7th Cir. 1544[1] (2020 ed.); see also United States v. Franklin, CR No. 07-967-PSG, 2011 WL 4377547 (C.D.Cal.) ECF No. 148 (Jury Instructions) ("First, the defendant knowingly and willfully used or attempted to use a passport; and Second, the defendant knew that the passport was issued or designed for the use of another.").

### IV. THE PURPOSE OF A PRELIMINARY HEARING IS TO DETERMINE WHETHER THERE IS PROBABLE CAUSE

At a preliminary hearing, the court's sole task is to determine whether there is "probable cause to believe an offense has been committed and the defendant committed it." Fed. R. Crim. P. 5.1(e). In other words, "the purpose of a preliminary hearing . . . is to require the government to show probable cause to hold a suspect pending trial." Hooker v. Klein, 573 F.2d 1360, 1367 n.7 (9th Cir. 1978). Courts routinely apply this same probable cause standard when reviewing complaints and search warrants. Probable cause requires "knowledge or reasonably trustworthy information sufficient to lead a

person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007); see also Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir. 1973) ("Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt."); United States v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001) ("Probable cause exists when there is a fair probability or substantial chance of criminal activity."). "[C]onclusive evidence of guilt is of course not necessary . . . to establish probable cause," Lopez, 482 F.3d at 1072, which means "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the probable-cause decision. . . . All we have required is the kind of 'fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (citations omitted).

In evaluating probable cause, courts consider the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). Under this standard, courts must consider "the whole picture," rather than viewing individual facts "in isolation." District of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018). Accordingly, "[i]t is not uncommon for seemingly innocent conduct to provide the basis for probable cause." United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir. 1989); see also United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1995) ("[O]bservations of conduct consistent with drug trafficking, even though apparently innocuous, can give rise to probable cause."). A magistrate judge presiding over a preliminary

hearing can "legitimately find probable cause while personally entertaining some reservations." Coleman, 477 F.2d at 1202.

Inquiries about potential affirmative defenses are not relevant to the probable cause determination. Broam v. Bogan, 320 F.3d 1023, 1023 (9th Cir. 2003) (once probable cause established, an officer need not investigate further to look for evidence that may exculpate accused "whether the claim is based on mistaken identity or a defense such as lack of requisite intent" (quoting Baker v. McCollan, 443 U.S. 137, 145-56 (1979))). Nor does the probable cause inquiry permit courts to question the thoroughness of an investigation that might have provided more than the minimal "fair probability" threshold -- even where further investigation may uncover "potentially dispositive" evidence. United States v. Goude, 440 F.3d 1065, 1073 & n.5 (9th Cir. 2005) (en banc) ("the benchmark is not what the FBI 'could have' done" (citing United States v. Miller, 753 F.2d 1475, 1481 (9th Cir. 1985) (probable cause exists even though officers failed to take "simple steps" which could have independently verified facts))). Once probable cause is established, there is simply no requirement that officers "continue to investigate or seek further corroboration." Ewing v. City of Stockton, 588 F.3d 1218, 1227 (9th Cir. 2009).

**V.   EVIDENTIARY MATTERS**

A.   The Federal Rules of Evidence do not apply.

The Federal Rules of Evidence "do not apply to . . . a preliminary examination in a criminal case." Fed. R. Evid. 1101(d)(3). The only exception is that the rules on privilege still apply. Fed. R. Evid. 1101(c). As described below, the evidence that may be presented at preliminary hearings differs in important

6

respects from the typical rules of evidence.

B. <u>Hearsay is admissible.</u>

Because the normal rules of evidence do not apply, hearsay is admissible at preliminary hearings. See, e.g., <u>Santos v. Thomas</u>, 830 F.3d 987, 991 (9th Cir. 2016) ("In probable cause hearings under American law, the evidence taken need not meet the standards for admissibility at trial. Indeed, at a preliminary hearing in federal court a finding of probable cause may be based upon hearsay in whole or in part.") (internal quotation marks omitted); <u>Peterson v. California</u>, 604 F.3d 1166, 1171 n.4 (9th Cir. 2010) (the Fourth Amendment permits a determination of probable cause at a preliminary hearing based on hearsay testimony). This concept has deep roots. Rule 5.1, the rule governing preliminary hearings, previously contained an explicit statement that "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part." The Advisory Committee omitted that language in the 2002 amendments, deeming it unnecessary because federal law had become clear that it is appropriate to rely on hearsay at the preliminary hearing and the Federal Rules of Evidence explicitly state that they do not apply at this stage. Fed. R. Crim. P. 5.1 Advisory Committee Notes on 2002 Amendments; Fed. R. Evid. 1101. Presentation of hearsay at a preliminary hearing also poses no Confrontation Clause problem, because the Confrontation Clause is a trial right. <u>Peterson</u>, 604 F.3d at 1169-70.

C. <u>Suppression arguments are premature.</u>

At a preliminary hearing, the defendant "may not object to evidence on the ground that it was unlawfully acquired." Fed. R. Crim. P. 5.1(e). Thus, a defendant may not raise arguments that

7

evidence should be suppressed. See, e.g., Giordenello v. United States, 357 U.S. 480, 484 (1958); United States v. Olender, No. 00-CR-80141-DT, 2000 WL 977295, at *3 (E.D. Mich. May 26, 2000).

### D. Cross-examination is limited.

Because the only purpose of the preliminary hearing is to determine probable cause, the scope of cross-examination of government witnesses is limited. "Cross-examination at a preliminary hearing, like the hearing itself, is confined by the principle that a probe into probable cause is the end and aim of the proceeding[.]" Coleman, 477 F.2d at 1201. Defense counsel may not use cross-examination to go "on an impermissible quest for discovery." Id. For example, the Fifth Circuit upheld a magistrate judge's decision to prevent cross-examination about the identity of an informant. United States v. Hart, 526 F.2d 344, 344 (5th Cir. 1976). Indeed, informant identity is generally privileged, Roviaro v. United States, 353 U.S. 53, 59 (1957), and any such disclosure would be particularly inappropriate at this preliminary stage. McCray v. Illinois, 386 U.S. 300, 311 (1967) (upholding state's refusal to compel police officers to divulge informant's identity at preliminary hearing, noting, "we have repeatedly made clear that federal officers need not disclose an informer's identity in applying for an arrest or search warrant").

Likewise, cross-examination questions directed to potential suppression arguments would be outside the scope of the preliminary hearing. In addition to the special limitations for preliminary hearings, "cross-examination is properly to be limited at preliminary hearing, as at trial, to the scope of the witness'[s] direct examination." Coleman, 477 F.2d at 1201.

8

E. <u>Defense subpoenas are limited.</u>

The defendant is entitled to subpoena witnesses "whose testimony promises appreciable assistance on the issue of probable cause," unless there is "good cause for not requiring [the witness's] presence." <u>Id.</u> at 1205. Good cause for not requiring a witness's presence may include "physiological or psychological reasons" that make appearance unreasonable. <u>United States v. King</u>, 482 F.2d 768, 773 (D.C. Cir. 1973). Subpoenas must comply with Rule 17, including the requirement that the defense obtain a court order for any subpoena requiring production of personal or confidential information about a victim and that the court give the victim an opportunity to move to quash the subpoena. Fed. R. Crim. P. 17. Subpoenas may not seek privileged information. <u>See</u> Fed. R. Evid. 1101(c), (d) (stating that rules on privilege apply to preliminary examinations in criminal cases). Subpoenas are not "a means of discovery for criminal cases," and, as always, they must be limited to relevant, admissible, and specific information. <u>United States v. Nixon</u>, 418 U.S. 683, 698-99 (1974); <u>see also</u> <u>United States v. Komisaruk</u>, 885 F.2d 490, 494-95 (9th Cir. 1989) (courts may quash subpoenas if the information sought would be immaterial, unreasonable, oppressive, or irrelevant).

**VI. DISCLOSURES REQUIRED INCIDENT TO PRELIMINARY HEARINGS**

Disclosure is a natural, but collateral, effect of any preliminary hearing. A preliminary hearing "does not include discovery for the sake of discovery." <u>Coleman</u>, 477 F.2d at 1199-200; <u>see also</u> <u>Robbins v. United States</u>, 476 F.2d 26, 32 (10th Cir. 1973) ("[A] preliminary hearing is not designed for the purpose of affording discovery for an accused."); <u>United States v. Begaye</u>, 236 F.R.D. 448, 454 (D. Ariz. 2006) ("[T]he rules of discovery found in

9

Rule 16, Federal Rules of Criminal Procedure, are not applicable to preliminary hearings."). Rather, Rule 5.1 directs the parties to make certain limited disclosures. Specifically, the parties are required to produce the statements of the witnesses whom they call to testify at the preliminary hearing. See Fed. R. Crim. P. 5.1(h), 26.2(a)-(d).

Statements must be produced only if they "relate[] to the subject matter of the witness's testimony" and also fall into one of the following categories:

> (1) a written statement that the witness makes and signs, or otherwise adopts or approves;
>
> (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or
>
> (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement.

Fed. R. Crim. P. 26.2(f). As to the first category, a report or notes on a witness interview cannot be adopted by the witness unless the witness read them or heard them read back. Goldberg v. United States, 425 U.S. 94, 110 n.19 (1976); United States v. Traylor, 656 F.2d 1326, 1336 (9th Cir. 1981). As to the second category, records only qualify if they "reflect the witness'[s] own words" and constitute a "complete recital." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). Thus, Rule 26.2 generally does not require disclosure of interview reports unless the report author is a testifying witness and testifies about the interview. See United States v. Moore, 651 F.3d 30, 75 (D.C. Cir. 2011). If material does qualify as witness statements, it must be turned over "[a]fter a witness . . . has testified on direct examination." Fed.

R. Crim. P. 26.2(a); see United States v. Mills, 641 F.2d 785, 789-90 (9th Cir. 1981) (holding that "no statement of a government witness is discoverable until the witness has testified on direct examination").

### VII. CONCLUSION

The foregoing provides an overview of legal issues relating to preliminary hearings. Should any issue arise that has not been covered in this brief, the government respectfully requests leave to submit such further memoranda as may be necessary.